[No. D041882. Fourth Dist., Div. One. Aug. 28, 2003.]

THE REDEVELOPMENT AGENCY OF THE CITY OF SAN DIEGO,
Plaintiff and Appellant, v.
SAN DIEGO GAS & ELECTRIC COMPANY, Defendant and Respondent.

**COUNSEL**

Foley & Lardner, Opper and Varco, Richard G. Opper and Linda C. Beresford for Plaintiff and Appellant.

C. Larry Davis for Defendant and Respondent.

**OPINION**

MCINTYRE, J.— ■  In this action we conclude that the Polanco Redevelopment Act (the Act) (Health & Saf. Code, § 33459 et seq.; all undesignated section references are to this code) allows a redevelopment agency to bring a civil action for an order compelling responsible parties to remove or remedy environmental contamination within a project area and that the redevelopment agency need not plead direct financial jeopardy to have standing to sue.

### FACTUAL AND PROCEDURAL BACKGROUND

■  On this appeal of a judgment of dismissal entered after the sustaining of a demurrer, we accept as true all the material allegations of the complaint and facts that may properly be judicially noticed. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083]; *Saks v. Damon Raike & Co.* (1992) 7 Cal.App.4th 419, 422 [8 Cal.Rptr.2d 869].) The Redevelopment Agency of the City of San Diego (the Agency) alleges the following facts in its complaint.

The Agency is a redevelopment agency created under the Community Redevelopment Law (§ 33000 et seq.) to develop blighted areas of San Diego. The San Diego Unified Port District (the Port District) is a public entity directed by statute "to develop the harbors and ports of this State for

multiple purpose use for the benefit of the people." (Harb. & Nav. Code, App. 1, § 2.) The Port District is the trustee on behalf of the people of the State of California for real property known as the "Campbell Shipyard," which is part of a redevelopment project area within the Agency's territory. (*Id.*, § 5.5.) Part of the redevelopment project includes an adjacent area known as the "East Parking Lot" (also referred to as the Site). Redevelopment of the Campbell Shipyard and the adjacent East Parking Lot is part of the convention center hotel project being developed by the Port District. San Diego Gas & Electric Company (SDG&E) previously operated a manufactured gas plant on property near the East Parking Lot where it installed a tar basin and gas works refuse settling tank.

In 1995 the Regional Water Quality Control Board (the Control Board) issued a cleanup and abatement order for the East Parking Lot because chemical byproducts of manufactured gas products had contaminated the soil and groundwater. The Control Board later amended its order to direct that soil in the East Parking Lot be removed because it contained hazardous substances. The Agency alleges that SDG&E's activities caused this contamination and that SDG&E, as a "responsible party" under the Act, may be compelled to remove the contamination.

In February 2001 the Agency and the Port District entered into an "Agreement for the Joint Exercise of Powers" (JPA), which provides that the Agency and the Port District will cooperate in the remediation of the Campbell Shipyard. The Agency alleges that "[t]he primary purpose of the JPA is to create a relationship between the Port District and the Agency for each to use their powers to facilitate the cleanup of the Site, and to look for 'responsible parties' who are by law required to assist in such cleanups." The JPA provides that the Port District will fund "all fees and costs of any kind related to the actions" taken under the JPA and that no claim can be made against the Agency or the City of San Diego for fees or costs.

In March 2001 the Agency sent SDG&E, as the identified responsible party, a 60-day notice requesting a response as to how it would assist in the cleanup of the East Parking Lot, but SDG&E did not submit a cleanup plan or agree to participate in remediation of the Site. (§ 33459.1, subd. (b)(2).) In November 2002 the Agency filed this action for injunctive relief under the Act seeking to compel SDG&E to remove the hazardous substances from the East Parking Lot under a plan approved by the Control Board.

SDG&E demurred to the complaint arguing that the Agency lacked standing to bring a cause of action for injunctive relief because it had contractually allocated all of its risk to the Port District via the JPA and had not suffered any injury. The trial court issued a telephonic ruling sustaining the demurrer

with leave to amend to add the Port District as a plaintiff, concluding that the Act is limited to an action to recover costs and the Agency was unable to bring a costs action because the Port District agreed to indemnify it for any damages under the JPA. After hearing oral argument, the trial court took the matter under submission and issued a "Final Ruling on Demurrer," concluding that section 33459.4 of the Act is limited to an action to recover costs and that the Agency is unable to bring such an action because it entered into an indemnification agreement with the Port District. The trial court reaffirmed the grant of leave to amend. After the Agency declined to amend the complaint, the parties appeared before the trial court to discuss entry of judgment. The trial court modified its final ruling, deleting its conclusion that section 33459.4 of the Act does not authorize injunctive relief and finding that the Agency lacked standing to sue because the JPA immunized it from any direct costs. The trial court entered judgment for SDG&E and the Agency appeals.

## DISCUSSION

### Issues Presented and Standard of Review

This appeal presents the following two legal issues, namely, (1) does the Act allow a redevelopment agency to bring a civil action for an order compelling responsible parties to remove or remedy environmental contamination within a project area, and (2) if so, must a redevelopment agency plead actual financial injury or damage in order to obtain such relief?

■ These questions are one of law, requiring us to independently review, construct and apply the Act. (*Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 711 [49 Cal.Rptr.2d 722].) The rules governing such statutory construction are well established: "We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] 'In determining intent, we look first to the language of the statute, giving effect to its "plain meaning." ' [Citations.] Although we may properly rely on extrinsic aids, we should first turn to the words of the statute to determine the intent of the Legislature. [Citation.] Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

■ We also review the judgment of dismissal de novo, and exercise our independent judgment as to whether the complaint states a cause of action. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].) We assume the truth of all properly pleaded facts, as well as facts

inferred from the pleadings, and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context. (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 579 [94 Cal.Rptr.2d 3, 995 P.2d 139].)

1

### *The Act Allows a Redevelopment Agency to Sue for Injunctive Relief*

SDG&E contends the Act limits a redevelopment agency to an action to recover costs after it cleans up the contamination and that it does not allow for injunctive relief prior to any cleanup. Although SDG&E contends a "plain reading" of the Act supports its assertion, it also claims that review of the legislative history strengthens its position. Applying the rules of statutory construction, we disagree and conclude that the Act provides the Agency with the right to sue either for costs after it cleans up the contamination or injunctive relief to compel a cleanup.

It is the policy of this State to promote the redevelopment of blighted areas by remedying "injurious conditions through the employment of all appropriate means." (§ 33037, subd. (a).) ■ The existence of hazardous waste on a property is considered to be a blight-causing condition that permits a redevelopment agency to use its authority under the Act. (§ 33031, subd. (b)(1).) The Act expressly provides the Agency with the power to take "any actions" necessary to remove hazardous substances "from property within a project area, *whether the agency owns that property or not.*" (§ 33459.1, subd. (a)(1), italics added.) Section 33459.4, subdivision (a) also provides in part that "if a redevelopment agency undertakes action to remedy or remove, *or to require others to remedy or remove, including compelling a responsible party through a civil action, to remedy or remove a release of hazardous substance*, any responsible party or parties shall be liable to the redevelopment agency for the costs incurred in the action." (Italics added.) ■ Thus, the plain language of the Act allows a redevelopment agency to compel a responsible party through a civil action to remedy or remove hazardous substances and then recover its costs incurred in pursuing the action. (*Ibid.*) While SDG&E disputes this interpretation, its construction of this section renders the above italicized words "devoid of meaning and surplusage—a result the court seeks to avoid in construing statutory language." (*California Assn. of Retail Tobacconists v. State of California* (2003) 109 Cal.App.4th 792, 840 [135 Cal.Rptr.2d 224].)

While SDG&E points out that section 33459.4 is titled "Costs of remedy or removal," this fact is not significant because the title was not part of the law when enacted and publishers' titles are unofficial. (*People v. Avanessian*

(1999) 76 Cal.App.4th 635, 641–642 & fn. 6 [90 Cal.Rptr.2d 367].) Moreover, this argument ignores section 33459.4, subdivision (e), which provides: "The action to recover costs provided by this section is in addition to, and is not to be construed as restricting, any other cause of action available to a redevelopment agency." Other than its own interpretation of section 33459.4, SDG&E provided no authority to support it assertion that a redevelopment agency lacks the ability to sue for injunctive relief prior to any cleanup. (See § 33125, subd. (a) [an agency may sue].)

We agree with the Agency that the plain language of the Act authorizes a redevelopment agency to seek injunctive relief compelling a responsible party to cleanup its hazardous waste and there is no need to review the legislative history. But even if the Act was ambiguous, the legislative history shows that the Legislature intended a redevelopment agency to have such power.

The Legislature enacted the Act in 1990 through the passage of Assembly Bill No. 3193. The Act authorized redevelopment agencies to remediate contaminated properties within a project area when the responsible party could not be located, refused to implement a remedial action plan, or failed to adequately perform a remedial action plan. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1898 (1997–1998 Reg. Sess.) as amended Apr. 28, 1998, for hearing date of May 12, 1998, p. 1.) The express purpose of the Act was to give redevelopment agencies qualified immunity so as to encourage and enable them to clean up contaminated property. Without the qualified immunity, redevelopment agencies undertaking cleanup efforts could become a "responsible party," with potential deep-pocket liability for the entire waste or spill site. (*Ibid.*)

When enacted, the Act authorized redevelopment agencies to take actions "necessary and consistent with state and federal cleanup laws" to remediate hazardous substances on property that is part of a redevelopment project. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1898, *supra*, p. 2.) Section 33459.1, subdivision (a) of the Act contains similar language. Significantly, federal and state cleanup laws allow the use of injunctions to compel responsible parties to remediate contaminated property. (42 U.S.C. §§ 9606(a), 6973(a); Health & Saf. Code, § 25358.3, subds. (a)(3), (e), (f) & (g).)

While SDG&E recognizes the existence of these laws, it argues that they all require "imminent and substantial endangerment to the public health or welfare" and that the Agency has not expressly or implicitly alleged such danger exists in this action. We do not agree that by referencing "state and federal cleanup laws" our Legislature intended to incorporate such an allegation as an element of a cause of action for injunctive relief under the Act.

(See *Redevelopment Agency v. Salvation Army* (2002) 103 Cal.App.4th 755, 766 [127 Cal.Rptr.2d 30] (*Salvation Army*) [rejecting contention that Act adopted various procedural requirements of federal law as an element of a cause of action for cost recovery under the Act].)

In 1998 the Legislature amended the Act through Senate Bill No. 1898. (Stats. 1998, ch. 438, § 1 et seq.) The primary purpose of the bill was to repeal the sunset date for the immunity from liability and cost recovery provisions of existing law. (Sen. Com. on Environmental Quality, Analysis of Sen. Bill No. 1898 (1997–1998 Reg. Sess.) as amended Apr. 13, 1998, for hearing date of Apr. 20, 1998, p. 2.) When Senate Bill No. 1898 was introduced, a proposed amendment to section 33459.1, subdivision (a)(1) included language that a redevelopment agency could take any actions necessary and consistent with state and federal cleanup laws to remediate contaminated property or "seek an injunction in superior court to compel any responsible party to take an action, whether the agency owns the property or not." (Sen. Bill No. 1898 (1997–1998 Reg. Sess.) as introduced Feb. 19, 1998, § 8.) The Senate Committee on Environmental Quality noted that the bill would grant redevelopment agencies "explicit authority to seek injunctions against responsible parties." (Sen. Com. on Environmental Quality, Analysis of Sen. Bill No. 1898, *supra*, p. 2.) The reference to "explicit authority" recognized the implicit authority to sue to compel a cleanup present in the existing version of the Act.

Via amendment on June 29, 1998, the Assembly deleted the language in section 33459.1, subdivision (a)(1) expressly authorizing the use of injunctions. (Assem. Amend. to Sen. Bill No. 1898 (1997–1998 Reg. Sess.) June 29, 1998, § 2.) The Senate Rules Committee noted the deletion, but apparently recognized that the power to compel a cleanup still existed by commenting that the proposed bill "[e]xpressly provide[ed] that compelling a responsible party to clean up a property is not an action that [would] cause the redevelopment agency to become liable for the cleanup." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1898 (1997–1998 Reg. Sess.) as amended Aug. 10, 1998, p. 1.)

Another Assembly amendment on July 8, 1998, added the provision to section 33459.4, subdivision (a) recognizing that responsible parties become liable to the redevelopment agency for the costs incurred in any action requiring others to remedy or remove a hazardous substance, "including compelling a responsible party through a civil action, to remedy or remove a release of hazardous substance." (Assem. Amend. to Sen. Bill No. 1898 (1997–1998 Reg. Sess.) July 8, 1998, § 5.) Thus, although the Assembly removed the injunction language from section 33459.1, subdivision (a)(1) on

June 29, it added language to section 33459.4, subdivision (a) on July 8 indicating a redevelopment agency could pursue a civil action to compel a responsible party to remedy or remove a release of hazardous substance and then seek to recover its costs incurred in prosecuting the action.

Following the July 8 amendment, the Assembly Committee on Appropriations commented that the bill allows a redevelopment agency to cleanup "or to compel" a responsible party to clean up contaminated property. (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1898 (1997–1998 Reg. Session) as amended July 8, 1998, for hearing date of July 15, 1998, p. 1.) The Legislative Counsel's Digest for the chaptered bill also recognized that a redevelopment agency that "causes another person to undertake and complete" the removal of a hazardous substance would be immunized from liability for the cleanup. (Legis. Counsel's Dig., Sen. Bill No. 1898, Stats. 1998, ch. 438, par. (2).)

Here, the remedial purpose of the Act, the plain language of the statute and the legislative history all support the conclusion that a redevelopment agency may seek injunctive relief to compel a responsible party to clean up hazardous substances on property within a redevelopment agency project area whether the redevelopment agency owns the property or not.

2

*Actual Financial Injury to a Redevelopment Agency Is Not a Prerequisite Under the Act*

SDG&E contends the Agency lacks standing to sue because it has not sustained any injury and cannot sustain any injury because the JPA insulates it from any cost exposure. In making this assertion, SDG&E relies on this court's opinion in *Salvation Army* setting forth the elements of a claim for cost recovery under the Act as including the allegation that the redevelopment agency incurred costs to remedy or remove the hazardous substance as necessary to implement the approved plan. (*Salvation Army, supra,* 103 Cal.App.4th at p. 765.) As discussed below, these arguments fail because "injury" to the Agency via the actual payment of costs is not a prerequisite under the Act, nor is it necessary to allege costs were incurred where the redevelopment agency seeks injunctive relief.

■ Only a real party in interest has standing to prosecute an action, except as otherwise provided by statute. (Code Civ. Proc., § 367.) A party who is not the real party in interest lacks standing to sue. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004 [79 Cal.Rptr.2d 544].) "A real party in interest ordinarily is defined as the person possessing the right

sued upon by reason of the substantive law." (*Killian v. Millard* (1991) 228 Cal.App.3d 1601, 1605 [279 Cal.Rptr. 877].) ▌ A complaint filed by someone other than the real party in interest is subject to general demurrer on the ground that it fails to state a cause of action. (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276].) The purpose of this section is to protect a defendant from harassment by other claimants on the same demand. (*Keru Investments, Inc. v. Cube Co.* (1998) 63 Cal.App.4th 1412, 1424 [74 Cal.Rptr.2d 744].)

The Community Redevelopment Law expressly recognizes that the existence of a blighted area creates a public injury. (§ 33035, subd. (a) ["blighted areas ... constitute[] a serious and growing menace which is condemned as injurious and inimical to the public health, safety, and welfare ... of the people of the State"].) The benefits resulting from remedying and redeveloping blighted areas "accrue to all the inhabitants and property owners of the communities in which they exist." (*Id.*, subd. (e).) The existence of hazardous waste on a property is considered to be a blight-causing condition authorizing a redevelopment agency to use its authority under the Act. (§ 33031, subd. (b)(1).) The Act expressly provides redevelopment agencies with the power to take "any actions" necessary to remove hazardous substances "from property within a project area, *whether the agency owns that property or not.*" (§ 33459.1, subd. (a)(1), italics added.) Nothing within the Act requires a redevelopment agency to sustain "injury" through the actual payment of costs in order to compel a responsible party to remediate contaminated property within its territory. Thus, SDG&E's argument that the Agency lacks standing to sue fails because its underlying premise—that the Agency must sustain an injury—is faulty.

We also reject SDG&E's contention that the JPA is collusive and that the Agency is using the JPA to create the power to sue for injunctive relief that it otherwise does not possess. The Agency has the right to sue SDG&E under the Act to compel it to remove hazardous substances at the Site because the Site is within the Agency's redevelopment project territory. The existence of the JPA does not affect this right. ▌ Even if this were an action by the Agency to recover costs incurred in remediating the Site, the indemnity provision within the JPA would not bar the claim because under the collateral source rule, an action against a wrongdoer is not precluded by the receipt of payment from a source wholly independent of the wrongdoer. (*Anheuser-Busch, Inc. v. Starley* (1946) 28 Cal.2d 347, 349 [170 P.2d 448].) While we note that the Port could join in this action, suing SDG&E under a public nuisance theory to abate the contamination, nothing in the Act requires this, and the existence of this alternative theory does not affect the power that the Agency possesses over the Site via the Act.

## DISPOSITION

The judgment is reversed and the matter is remanded to the superior court which is directed to vacate its order sustaining SDG&E's demurrer to the complaint and dismissing the action and to enter a new order overruling the demurrer. The Agency is to recover its costs of appeal.

McDonald, Acting P. J., and McConnell, J., concurred.