In re: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

This document relates to:

California–American Water Co. v. Atlantic Richfield Co., et al., No. 04 Civ. 4974;

City of Fresno v. Atlantic Richfield Co., et al., No. 04 Civ. 4973;

City of Riverside v. Atlantic Richfield Co., et al., No. 04 Civ. 4969;

City of Roseville v. Atlantic Richfield Co., et al., No. 04 Civ. 4971;

Quincy Community Services District v. Atlantic Richfield Co., et al., No. 04 Civ. 4970;

Silver, et al. v. Alon USA Energy, Inc., et al., No. 04 Civ. 4975;

People of State of California, et al., v. Atlantic Richfield Co., et al., No 04 Civ. 4972.

No. 1:00–1898.
MDL No. 1358(SAS)
M21–88.

United States District Court,
S.D. New York.

May 31, 2005.

Victor M. Sher, Todd E. Robbins, Sher Leff LLP, San Francisco, CA, Scott Summy, Celeste A. Evangelisti, Baron & Budd, P.C., Dallas, TX, for California–American Water Co., City of Riverside, City of Roseville, Quincy Community Services District, Martin Silver, Pauline Silver, Laura Silver, John T. Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, Adrian Kruso, Sacramento County Water Agency, Sacramento Groundwater Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community

Water District, Sacramento Suburban Water District, San Juan Water District, and City of Sacramento.

Michael D. Axline, Miller, Axline & Sawyer, P.C., Sacramento, CA, for City of Fresno.

Robert Gordon, Stanley N. Alpert, C. Sanders McNew, Weitz & Luxenberg, P.C., New York, NY, for Plaintiffs.

Peter John Sacripanti, James A. Pardo, Stephen J. Riccardulli, McDermott, Will & Emery LLP, New York, NY, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

The California Plaintiffs[1] seek relief from the actual and/or threatened contamination of their water supply with the gasoline additive methyl tertiary butyl ether ("MTBE"). Plaintiffs assert, among others, causes of action under California Civil Code § 1882.[2] Defendants now move to dismiss the section 1882 claims, arguing that the provision does not apply to the alleged contamination of water. In addition, defendants move to strike plaintiffs' prayers for treble damages and attorneys' fees pursuant to section 1882.2 of the California Civil Code and section 1021.5 of the California Code of Civil Procedure.[3] Defendants' motion is granted for the reasons that follow.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Rule 12(b)(6), a motion to dismiss should be granted only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.' "[4] At the motion to dismiss stage, the issue " 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' "[5] The task of the court in ruling on

1. California–American Water Co., City of Fresno, City of Riverside, City of Roseville, Quincy Community Services District, Martin Silver, Pauline Silver, Laura Silver, John T. Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, Adrian Kruso, Sacramento County Water Agency, Sacramento Groundwater Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community Water District, Sacramento Suburban Water District, San Juan Water District, and City of Sacramento.

2. Although plaintiffs allege that defendants are liable under section 1882.1, I will refer to the claims as "section 1882 claims" for ease of reference, and because plaintiffs have styled their causes of action as "Liability Under Civil Code Section 1882 Against All Defendants." See, e.g., California–American Water Co. Second Amended Complaint (Eighth Cause of Action).

3. Defendants also move for dismissal, or for a more definite statement of the "representational standing" claims and allegations in *The People of the State of California v. Atlantic Richfield Co.*, No. 04 Civ. 4972. Because the same issue is raised in defendants' motion to dismiss in *Orange County Water District v. Unocal Corp.*, No. 04 Civ. 4968, I will address that part of the motion when I consider defendants' motion in *Orange County Water District*. I will also address defendant 7–Eleven's supplemental argument at that time.

4. *Weixel v. Board of Educ. of N.Y.*, 287 F.3d 138, 145 (2d Cir.2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (alterations omitted)).

5. *Phelps v. Kapnolas*, 308 F.3d 180, 184–85 (2d Cir.2002) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998)). *Accord In re Initial Public Offering Sec. Litig.*, 241 F.Supp.2d 281, 322–24 (S.D.N.Y.2003).

a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." [6] When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor.[7]

### B. Motion to Strike

 Federal Rule of Civil Procedure 12(f) permits the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." [8] Courts are generally "very reluctant to determine disputed or substantial issues of law on a motion to strike." [9] A motion to strike on the ground that the matter is impertinent and immaterial should be denied " 'unless it can be shown that no evidence in support of the allegation would be admissible.' " [10] "Immaterial" matter is that which has no essential or important relationship to the claim for relief, and "impertinent" material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues.[11]

## III. DISCUSSION

### A. California Civil Code §§ 1882–1882.6

 Section 1882.1 of the California Civil Code provides:

A utility may bring a civil action for damages against any person who commits, authorizes, solicits, aids, abets, or attempts any of the following acts:

(a) Diverts, or causes to be diverted, utility services by any means whatsoever.

(b) Makes, or causes to be made, any connection or reconnection with property owned or used by the utility to provide utility service without the authorization or consent of the utility.

(c) Prevents any utility meter, or other device used in determining the charge for utility services, from accurately performing its measuring function by tampering or by any other means.

(d) *Tampers with any property owned or used by the utility to provide utility services.*

(e) Uses or receives the direct benefit of all, or a portion, of the utility service with knowledge of, or reason to believe that, the diversion, tampering, or unauthorized connection existed at the time of the use, or that the use or receipt, was without the authorization or consent of the utility.[12]

Section 1882 defines "tamper" as "to rearrange, injure, alter, interfere with, or otherwise to prevent from performing normal

---

6. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 176 (2d Cir.2004) (quotation marks and citation omitted).

7. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

8. Fed.R.Civ.P. 12(f). *See also Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988).

9. *Simon v. Manufacturers Hanover Trust,* 849 F.Supp. 880, 882 (S.D.N.Y.1994).

10. *In re Merrill Lynch & Co., Inc. Research Reports,* 218 F.R.D. 76, 78 (S.D.N.Y.2003) (quoting *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976)).

11. *See Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (citing 5 Wright & Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)).

12. California Civ.Code § 1882.1 (emphasis added).

or customary function."[13] The term "utility service" is defined as "the provision of electricity, gas, water, or any other service or commodity furnished by the utility for compensation."[14]

Defendants argue that plaintiffs' claims must be dismissed because section 1882.1 does not apply to the contamination of water. They contend that the statute's plain language and legislative history demonstrate that it addresses tampering with equipment used to provide utility services.[15] Specifically, they argue that the phrase "property . . . to provide utility services" does not include groundwater, and that the word "tamper" does not encompass contamination of groundwater. According to defendants, plaintiffs are seeking redress for injuries to the water itself, rather than to "property owned or used" by them to provide that water.

Plaintiffs respond that groundwater constitutes "property . . . used to provide utility services" because plaintiffs have usufructuary rights in the water pumped by their wells, and they "use" it to deliver potable drinking water to consumers. Plaintiffs argue that defendants' characterization of the section 1882 claims as seeking a recovery for injury to the water itself, improperly conflates raw groundwater with the finished, treated, potable water that plaintiffs deliver to their customers' taps. In addition, they assert that contamination is covered by the term "tamper" because it constitutes "injury" to, "alteration" of and/or "interference" with property under state law. Hence, the central dispute between the parties concerns the meaning of the words "property" and "tamper" as used in section 1882.1 of the Civil Code.

■■■ Under California law, in construing the meaning of a statute, courts "look first to the words the Legislature used, giving them their usual and ordinary meaning. If there is no ambiguity in the language of the statute, then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs."[16] However,

> the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [ ] Literal

---

13. *Id.* § 1882(e).

14. *Id.* § 1882(g).

15. Pursuant to Federal Rule of Evidence 201(b), this Court takes judicial notice of the California state court opinions and orders, and legislative history of California Civil Code §§ 1882–1882.6, attached to the Declaration of Jon D. Anderson in Support of Request for Judicial Notice in Support of Defendants' Motion to Dismiss and to Strike California Complaints and Amended Complaints ("Anderson Decl."). *See Oneida Indian Nation v. State of New York,* 691 F.2d 1070, 1086 (2d Cir.1982) ("When there is no dispute as to the authenticity of . . . materials and judicial notice is

limited to law, legislative facts, or factual matters that are incontrovertible, such notice is admissible."); *Fridman v. City of New York,* 183 F.Supp.2d 642, 655 n. 6 (S.D.N.Y.2002) (taking judicial notice of state court opinions because "the text and existence of the State Opinions is not in dispute and are capable of ready and accurate determination"); *Smith v. Rae–Venter Law Group,* 29 Cal.4th 345, 360 n. 7, 127 Cal.Rptr.2d 516, 58 P.3d 367 (2002) (taking judicial notice of documents bearing on legislative history of statute).

16. *Smith,* 29 Cal.4th at 358, 127 Cal.Rptr.2d 516, 58 P.3d 367 (quotation marks and citations omitted).

construction should not prevail if it is contrary to the legislative intent apparent in the statute.[17]

■ The term "property" is not defined in section 1882, and plaintiffs' argument regarding its usufructuary rights cannot be dismissed out of hand. "The concept of property in California is extremely broad .... [and] is sufficiently comprehensive to include every species of estate, real and personal, and everything which one person can own and transfer to another...."[18] "Ownership is not a single concrete entity but a bundle of rights and privileges as well as of obligations."[19] "The authorities in [California] have uniformly defined the right to appropriative water as a possessory property right."[20] Therefore, under a liberal interpretation of the word "property," plaintiffs' usufructuary rights would be covered by the statute.

Nonetheless, the term "property" cannot be interpreted in isolation. When read in conjunction with the rest of section 1882.1, it is plain that the word "property" in subsection (d) does not mean property rights, but rather the physical object to which those rights attach—in this case, the instruments used to provide utility services

(*e.g.,* pipes, pumps, and meters). Subsection (d) prohibits tampering with any "property *owned or used* by the utility...." This "property" must be capable of both ownership and use because "property" cannot have one meaning when paired with "owned" and another when paired with "used." Plaintiffs' proffered definition is logical when coupled with the latter but not the former. While plaintiffs might exercise or "use" their usufructuary rights to provide water to customers, they cannot "own" or have property rights in usufructuary rights. Moreover, subsection (d) is not the only place where the term "property" is employed. Subsection (b) also makes it actionable to connect or reconnect one's utility service with "property owned or used by the utility...." This use of the word "property" only makes sense with respect to tangible objects, and not legal rights. Finally, all the provisions of section 1882.1 relate to the unauthorized use of utility services. To read subsection (d) as including the right to sue for groundwater contamination would conflict with the rest of the statute.[21]

This construction comports with the statute's legislative history.[22] Sections

---

17. *Lungren v. Deukmejian,* 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299 (1988) (citations omitted).

18. *Estate of Sigourney,* 93 Cal.App.4th 593, 603, 113 Cal.Rptr.2d 274 (2001) (citing *Yuba River Power Co. v. Nevada Irr. Dist.,* 207 Cal. 521, 523, 279 P. 128 (1929)).

19. *Id.*

20. *Fullerton v. State Water Res. Control Bd.,* 90 Cal.App.3d 590, 598, 153 Cal.Rptr. 518 (1979). *Accord National Audubon Soc'y v. The Superior Ct. of Alpine County,* 33 Cal.3d 419, 441, 189 Cal.Rptr. 346, 658 P.2d 709 (1983) ("[T]he right of property in water is usufructuary, and consists not so much of the fluid itself as the advantage of its use. Hence, the cases do not speak of the ownership of

water, but only of the right to its use.") (citations omitted).

21. Because I find that plaintiffs' usufructuary rights are not "property" subject to utility tampering, I do not address the definition of "tamper." However, at least one court has found that the "plain meaning of the statute does not appear to encompass contamination within the scope of tampering." *Southern Cal. Water Co. v. Aerojet–General Corp.,* CV 02–6340, slip op. at 19 (C.D.Cal. Apr. 1, 2003), Ex. D to Anderson Decl.

22. *See Western Oil & Gas Ass'n v. Monterey Bay Unified Air Pollution Control Dist.,* 49 Cal.3d 408, 426, 261 Cal.Rptr. 384, 777 P.2d 157 (1989) ("[T]he objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its in-

1882–1882.6 were adopted as civil companion statutes to California Penal Code § 498, which makes the theft of utility services a misdemeanor.[23] Although state law criminalized energy diversion and meter tampering, "existing law [did] not authorize utilities to recover damages from individuals who [stole] energy or to obtain an injunction against prohibited practices.".[24] The purpose of Civil Code §§ 1882–1882.6 was "to deter energy theft"[25] by "establish[ing] a civil procedure for utilities to recover damages."[26]

Plaintiffs rely on the California Supreme Court's decision in *In re Jennings*,[27] for the proposition that the legislative purpose does not affect or limit the broad reach of a statute's plain language. In that case, the defendant had served beer to a minor in his home, and the minor later caused a drunk driving accident. The defendant was convicted under a statute that prohibited the "purchase" of an alcoholic beverage for a minor who thereafter proximately causes death or great bodily injury. The defendant argued that the statute did not apply to him because the legislature's primary concern in enacting the statute was to deter "shoulder tapping" (*i.e.*, asking an adult in front of a liquor store to purchase alcohol for the minor). The California Supreme Court rejected this argument, holding that "although the Legislature was focused on the shoulder tap scenario, the language of [the statute was] not so limited."[28]

*In re Jennings* does not dictate a different result in this case. *First*, I have already determined that the plain language of the statute precludes plaintiffs' section 1882 claims based on groundwater contamination. *Second, In re Jennings* is distinguishable because in that case the legislature's overarching concern was the ease with which minors obtained alcoholic beverages. Shoulder tapping happened to be "[o]ne of the top ways in which minors

---

terpretation."); *People ex rel. Lungren v. The Superior Ct. of the City and County of San Francisco*, 14 Cal.4th 294, 305, 58 Cal. Rptr.2d 855, 926 P.2d 1042 (1996) ("A court should not adopt a statutory construction that will lead to results contrary to the Legislature's apparent purpose.").

**23.** *See* California Penal Code § 498(b) ("Any person who, with intent to obtain for himself or herself utility services without paying the full lawful charge therefor ... commits, authorizes, solicits, aids, or abets any of the following shall be guilty of a misdemeanor: ... [] Tampers with any property owned by or used by the utility to provide utility services without the authorization or consent of the utility.").

**24.** Sen. Committee on Judiciary, Analysis of Assem. Bill No. 1285, 1981–82 Gen. Assem., Reg. Sess. at 1 (Cal.1981), Ex. G to Anderson Decl.

**25.** *Id.* at 2. *See also* Governor's Office, Enrolled Bill Report on Assem. Bill No. 1285 (Aug. 31, 1981), Ex. H to Anderson Decl. ("The recent rapid increase in utility rates has been accompanied by a similar rapid increase in the theft of utility services. This bill would provide utilities with a means of recovering damages incurred by theft, and would deter future thefts.").

**26.** Assembly Util. and Energy Comm., Analysis of Assem. Bill No. 1285, 1981–82 Gen. Assem., Reg. Sess. at 2 (Cal.1981), Ex. E to Anderson Decl. *See also* Sen. Repub. Caucus, Third Reading Analysis of Assem. Bill. No. 1285, 1981–82 Gen. Assem., Reg. Sess. at 1 (Cal.1981), Ex. F to Anderson Decl. ("This bill ... [g]ives a utility the right to bring a civil action for damages for the unauthorized taking or diversion of electricity, gas, or water without being properly metered or otherwise authorized by the utility.").

**27.** 34 Cal.4th 254, 17 Cal.Rptr.3d 645, 95 P.3d 906 (2004).

**28.** *Id.* at 265, 17 Cal.Rptr.3d 645, 95 P.3d 906.

gain[ed] access to alcohol."[29] It was therefore reasonable for the court to determine that the statute applied to "any situation in which an individual purchases alcoholic beverages for an underage person,"[30] even though legislative discussions centered around a particular *method* of access (*i.e.*, shoulder tapping). An analogous situation here would occur if the general assembly's debate had focused on meter tampering, *i.e.*, a means of energy theft, but the statute was worded more broadly. In any event, the legislative purpose here is to deter the theft of utility services—not to protect environmental resources.

■ The section 1882 claim of the *Silver* Plaintiffs is defective for the additional reason that only a "utility" may bring a civil action for damages under section 1882.[31] The *Silver* Plaintiffs allege that they "are owners of . . . a mobile home park located in Alpine, California"[32] and that they "own and operate a public water system which serves 152 mobile homes."[33] However, "[a]ny person . . . that maintains a mobilehome park . . . and provides, or will provide, water service to users through a submeter system is *not a public utility.*"[34] Therefore, the *Silver* Plaintiffs are specifically excluded from the definition of "utility," and their section 1882 claim must be dismissed.

Permitting the California Plaintiffs' section 1882 claims to proceed on the basis of groundwater contamination would be contrary to both the plain meaning and legislative history of the statute. Accordingly, defendants' motion to dismiss is granted.[35] Because these claims are dismissed, plaintiffs' corresponding requests for treble damages and attorneys' fees pursuant to section 1882.2 are stricken under Rule

**29.** *Id.* at 264, 17 Cal.Rptr.3d 645, 95 P.3d 906 (remarks of assemblyman introducing the bill) (emphasis added).

**30.** *Id.* at 266, 17 Cal.Rptr.3d 645, 95 P.3d 906.

**31.** *See* California Civ.Code § 1882.1. A "utility" is defined as "any electrical, gas, or water corporation as those terms are defined in the Public Utilities Code and includes any electrical, gas, or water system operated by any public agency." California Civ.Code § 1882(f). The Public Utilities Code, in turn, defines a water corporation as a utility if "the service is performed for, or the commodity is delivered to, the public or any portion thereof." California Pub. Util.Code § 216(a).

**32.** Silver Second Amended Complaint ¶ 3.

**33.** *Id.*

**34.** California Pub. Util.Code § 2705.5 (emphasis added). *See also id.* § 2705.6(a) ("A mobilehome park that provides water service only to its tenants from water supplies and facilities that it owns, not otherwise dedicated to public service, is not a water corporation.").

**35.** *See D.J. Nelson Trust v. Atlantic Richfield Co.*, No. 02AS00535 (Cal.Super. Ct. Sacramento Co. Sept. 13, 2002) (tentative ruling), *aff'd by order* (Cal.Super. Ct. Sacramento Co. Sept. 26, 2003), Ex. C to Anderson Decl. ("[T]he plain language of the statute, as well as the legislative history of Civil Code sections 1882 et seq . . . . demonstrates that section 1882.1 is intended to combat only illicit interference with the manner or means by which public utilities distribute and measure the services they provide. There is no evidence that the Legislature intended section 1882.1 to provide public utilities with an additional means to bring a civil action for injury to the service itself, such as contamination of groundwater."); *City of Santa Monica v. Shell Oil. Co.*, No. 01CC04331 (Cal.Super. Ct. Orange Co. July 12, 2002) (notice of ruling on defendants' motions to strike), Ex. B to Anderson Decl. (striking section 1882 claim); *Cambria Cmty. Servs. Dist. v. Chevron Corp.*, No. CV01089 (Cal.Super. Ct. San Luis Obispo Co. Apr. 12, 2002) (ruling on demurrer and motion to strike), Ex. A. to Anderson Decl. (dismissing section 1882 claim).

12(f).[36]

## B. California Code of Civil Procedure § 1021.5

Section 1021.5 of the California Code of Civil Procedure allows a court to award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest.... With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor, unless one or more successful parties and one or more opposing parties are public entities, in which case no claim shall be required to be filed therefor.... [37]

Defendants move to strike Plaintiff City of Fresno's prayer for attorneys' fees under section 1021.5 because plaintiff is a public entity suing private defendants. Although Fresno concedes that it cannot obtain attorneys' fees pursuant to this section, it asks the Court to strike only that portion of the prayer referring to section 1021.5 and to modify the requested relief to read: "Reasonable attorneys' fees and costs incurred in prosecuting this action, and prejudgment interest, to the full extent permitted by law." [38]

Fresno's fifth prayer for relief is stricken because plaintiff is not eligible for attorneys' fees under section 1021.5.[39] The Court declines to amend Fresno's complaint in the manner requested, as attorneys' fees are not normally recoverable in California,[40] and plaintiff may not invoke California Civil Code § 1882.2 as a statutory source for attorneys' fees.[41]

## IV. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss plaintiffs' causes of action under section 1882 and to strike plaintiffs' prayers for treble damages and attorneys' fees is granted. The Clerk of the Court is directed to close this motion. A conference is scheduled for 10 a.m. on June 9, 2005, in Courtroom 15C.

SO ORDERED.

---

**36.** *See City of Santa Monica,* No. 01CC04331 (striking prayer for treble damages and attorneys' fees under section 1882); *Cambria Cmty.,* No. CV01089 (striking prayer for treble damages under section 1882).

**37.** California Code Civ. Proc. § 1021.5.

**38.** Plaintiff City of Fresno's Opposition to Defendants' Motion to Dismiss and to Strike California Complaints and Amended Complaints at 3–4.

**39.** *See Tapley v. Lockwood Green Engineers, Inc.,* 502 F.2d 559, 560 (8th Cir.1974) (striking prayer for unlimited recovery because statute in place at time of complaint capped damages at $50,000); *Green v. Wolf Corp.,* 406 F.2d 291, 302–03 (2d Cir.1968) (providing guidance to district court that striking portions of complaint with respect to prayer for punitive damages would be acceptable because punitive damages not authorized in private securities actions); *Meisel v. North Jersey Trust Co. of Ridgewood, N.J.,* 216 F.Supp. 469, 469 (S.D.N.Y.1963) (granting motion to strike punitive damages from complaint because such damages not available under relevant provisions of Securities Exchange Act).

**40.** *See* California Code Civ. Proc. § 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties....").

**41.** *See Lipsky,* 551 F.2d at 893 ("[T]he courts should not tamper with the pleadings unless there is a strong reason for so doing.").