In re: **METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION**

This document relates to: Orange County Water District v. Unocal Corp., et al., 04–Civ–4968

No. 1:00–1898.
MDL 1358(SAS).
No. M 21–88.

United States District Court,
S.D. New York.

Oct. 10, 2006.

Michael Axline, Tracy O'Reilly, Miller, Axline & Sawyer, Sacramento, CA, for Orange County Water District.

Robin Greenwald, Robert Gordon, C. Sanders McNew, Weitz & Luxenberg, P.C., New York, NY, for Plaintiffs.

Peter John Sacripanti, James A. Pardo, Stephen J. Riccardulli, McDermott, Will & Emery LLP, New York, NY, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

In this consolidated multi-district litigation ("MDL"), plaintiffs seek relief from contamination, or threatened contamination, of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol ("TBA"), which is a product formed by the natural degradation of MTBE in water. The parties have already engaged in extensive motion practice, and familiarity with the Court's previous opinions is assumed.[1] The facts underlying this case are comprehensively set out in those opinions.[2]

Defendants now move for summary judgment on plaintiff Orange County Water District's ("OCWD") claims based on its "lack of a cognizable interest."[3] Specifically, defendants argue that because any alleged groundwater contamination has not injured OCWD's property, any damages it sustained are purely economic and cannot be recovered under either product liability or negligence theories.[4] Similarly, defendants argue that OCWD's trespass claim fails because it has not identified any "possessory interest in land" that has been invaded.[5] Further, defendants argue that OCWD's public nuisance claim should be dismissed because it is

---

**1.** See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 447 F.Supp.2d 289 (S.D.N.Y. Aug.18, 2006); In re MTBE Prods. Liab. Litig., 438 F.Supp.2d 291 (S.D.N.Y. June 23, 2006); In re MTBE Prods. Liab. Litig., 457 F.Supp.2d 324, 2006 WL 1738233 (S.D.N.Y. June 23, 2006); In re MTBE Prods. Liab. Litig., 2006 WL 928997 (S.D.N.Y. Apr.7, 2006), motion for reconsideration denied, 2006 WL 1816308 (June 26, 2006); In re MTBE Prods. Liab. Litig., 415 F.Supp.2d 261 (S.D.N.Y.2005); In re MTBE Prods. Liab. Litig., 399 F.Supp.2d 340 (S.D.N.Y.2005); In re MTBE Prods. Liab. Litig., 399 F.Supp.2d 325 (S.D.N.Y.2005); In re MTBE Prods. Liab. Litig., 2005 WL 1529594 (S.D.N.Y. June 28, 2005); In re MTBE Prods. Liab. Litig., 2005 WL 1500893 (S.D.N.Y. June 24, 2005); In re MTBE Prods. Liab. Litig., 402 F.Supp.2d 434 (S.D.N.Y.2005); In re MTBE Prods. Liab. Litig., 399 F.Supp.2d 242 (S.D.N.Y.2005); In re MTBE Prods. Liab. Litig., 233 F.R.D. 133 (S.D.N.Y.2005); In re MTBE Prods. Liab. Litig., 379 F.Supp.2d 348, 364 (S.D.N.Y.2005); In re MTBE Prods. Liab. Litig., 2005 WL 106936 (S.D.N.Y. Jan.18, 2005); In re MTBE Prods. Liab. Litig., 2005 WL 39918 (S.D.N.Y. Jan.6, 2005); In re MTBE Prods. Liab. Litig., 364 F.Supp.2d 329 (S.D.N.Y.2004); In re MTBE Prods. Liab. Litig., 361 F.Supp.2d 137 (S.D.N.Y.2004) ("MTBE VI"); In re MTBE Prods. Liab. Litig., 341 F.Supp.2d 386 (S.D.N.Y.2004) ("MTBE V"); In re MTBE Prods. Liab. Litig., 341 F.Supp.2d 351 (S.D.N.Y.2004) ("MTBE IV"); In re MTBE Prods. Liab. Litig., 342 F.Supp.2d 147 (S.D.N.Y.2004) ("MTBE III"); In re MTBE Prods. Liab. Litig., 209 F.R.D. 323 (S.D.N.Y.2002) ("MTBE II"); In re MTBE Prods. Liab. Litig., 175 F.Supp.2d 593 (S.D.N.Y.2001) ("MTBE I").

**2.** For a thorough recitation of plaintiffs' fact allegations see, for example, In re MTBE Prods. Liab. Litig., 379 F.Supp.2d at 364–67.

**3.** See Defendants' Memorandum of Law in Support of Motion for Summary Judgment of Plaintiff's Claims Based on Plaintiff's Lack of Cognizable Interest ("Def.Mem.") at 1. In addition to its common law and equitable claims, OCWD asserts a statutory claim for violation of the OCWD Act. See Plaintiff's Second Amended Complaint ("Compl.") ¶¶ 102–108. Defendants do not challenge that claim in this motion. See Def. Mem. at 1 n. 1.

**4.** See Def. Mem. at 1.

**5.** Id. at 7.

merely a products liability action in the guise of a nuisance action.[6] Finally, defendants assert that OCWD's claim for declaratory relief should be denied because it is duplicative of the other claims in the action.[7] For the reasons set forth below, defendants' motion is denied in part, and granted in part.

## II. APPLICABLE LAW

### A. Summary Judgement

Summary judgment is only appropriate where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[8] An issue of fact is genuine if " 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' "[9] while a fact will be deemed material where it " 'might affect the outcome of the suit under the governing law.' "[10] Further, even though plaintiff's allegations are taken as true, the claim may still fail as a matter of law if it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle it to relief, or if the claim is not legally feasible.[11]

The moving party bears this burden of demonstrating that there exists no genuine issue of material fact.[12] In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact that does "not rely on conclusory allegations or unsubstantiated speculation."[13] To do so, it must do more than show that there is " 'some metaphysical doubt as to the material facts.' "[14] In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[15]

## III. DISCUSSION

### A. Negligence and Products Liability

Defendants argue that OCWD seeks damages solely for economic losses which, in the absence of property damage, cannot be recovered under theories of either negligence or products liability.[16] Essentially, defendants argue that because OCWD does not complain of any MTBE contamination of its own wells, and because OCWD does not own the groundwater which it alleges has been or is threatened with MTBE contamination, it has no viable property interest capable of being damaged.[17] OCWD, in turn, contends that it

**6.** *See id.* at 12.

**7.** *See id.* at 14.

**8.** Fed.R.Civ.P. 56(c).

**9.** *Williams v. Utica Coll. of Syracuse Univ.,* 453 F.3d 112, 116 (2d Cir.2006) (quoting *Stuart v. American Cyanamid Co.,* 158 F.3d 622, 626 (2d Cir.1998)).

**10.** *Bouboulis v. Transport Workers Union of Am.,* 442 F.3d 55, 59 (2d Cir.2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

**11.** *See Allaire Corp. v. Okumus,* 433 F.3d 248, 250 (2d Cir.2006).

**12.** *See, e.g., Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005).

**13.** *Id.* at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 428 (2d Cir. 2001)) (quotation marks omitted).

**14.** *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

**15.** *See id.* (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).

**16.** *See* Def. Mem. at 8.

**17.** *See id.* at 9 (citing *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965)).

has valid property interests arising from its usufructuary and statutory rights, and that contamination of the groundwater by MTBE directly injures those rights.[18] Further, OCWD disputes defendants' application of the economic loss doctrine, which OCWD argues does not bar recovery for the costs it has incurred as a result of the alleged contamination.[19]

### 1. Property Interest

Whether OCWD has a valid property interest in the groundwater is a threshold question. In California, the groundwater is not owned by any individual or governmental entity but rather by "the people of the State" for whom the "State as an entity is the holder of the legal title as trustee for the benefit of the people of the state."[20] However, a usu-

fructuary interest may be acquired and this interest will be deemed to be a "possessory property right."[21]

Unlike a water provider, OCWD does not own or operate a network of wells used to provide water to the public.[22] Rather, OCWD's functions are, among other things, "managing, replenishing, regulating, and protecting" the groundwater within its geographic area of responsibility.[23] Accordingly, unlike other plaintiffs in this MDL, the thrust of OCWD's allegations is not linked to contamination of its own wells or other real property, but rather to its legal interests in the groundwater arising from its statutory authority and usufructuary rights.[24] Thus, while OCWD does not specifically allege that MTBE contamination of the groundwater is a con-

---

**18.** *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.Mem.") at 1.

**19.** *See id.*

**20.** *Selma Pressure Treating Co. v. Osmose Wood Preserving Co.*, 221 Cal.App.3d 1601, 1616, 271 Cal.Rptr. 596 (Cal.Ct.App.1990) (quotation marks and citations omitted).

**21.** *In re MTBE Liab. Litig.*, 402 F.Supp.2d at 439 (quoting *Fullerton v. State Water Res. Control Bd.*, 90 Cal.App.3d 590, 598, 153 Cal. Rptr. 518 (Cal.Ct.App.1979)). *See also National Audubon Soc'y v. Superior Ct. of Alpine County*, 33 Cal.3d 419, 441, 189 Cal.Rptr. 346, 658 P.2d 709 (1983) ("[T]he right of property in water is usufructuary, and consists not so much of the fluid itself as the advantage of its use. Hence, the cases do not speak of the ownership of water, but only of the right to its use.") (citations omitted).

**22.** The undisputed facts show that OCWD does not own or operate any water production wells used "to extract or produce water for consumption." Defendants' Response to Plaintiff's Local Rule 56.1 Statement Regarding Defendants' Motion for Summary Judgment Based on Lack of Cognizable Interest ("Def.Resp.56.1.") at 4.

**23.** OCWD Act, California Water Code § 40–2(6)(a).

**24.** OCWD does allege that it owns some wells and other real property. Specifically, OCWD owns and operates "wells that produce groundwater for injection and replenishment purposes." Plaintiff's Local Rule 56.1 Statement in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.56.1") at 2. Defendants urge that OCWD should be precluded from making claims regarding such wells because it previously admitted in its Rule 36 admissions that it did not own or operate any water production wells "used to extract or produce water for consumption by humans, animals, agriculture, or business." Def. Resp. 56.1 at 6. Defendants' argument that plaintiff's admission, which focuses on wells used for consumption, must "by any logical interpretation" also encompass wells used for other purposes is not convincing. Wells used for replenishment and injection activities are not the same as wells used for consumption. Nevertheless, plaintiff's argument here focuses on its property interests arising from its usufructuary and statutory rights, and that is the subject of this Opinion. To the extent that wells owned by plaintiff have been contaminated by MTBE, plaintiff may well have a valid claim.

tamination of *its property*, it argues that it nevertheless has sufficient legal interests in the groundwater to seek damages allegedly sustained from contamination of the groundwater.[25] These interests—which are independent of land or well ownership—are "harmed, or threatened with harm, by defendants' conduct." [26]

■ Usufructuary rights generally arise from "some physical act with respect to the water by the appropriator to manifest the possessory right." [27] The appropriative right, however, may also "be based on conservation of groundwater through substitution of, or replenishment from, an alternative supply." [28] OCWD argues that through its replenishment of the groundwater basin it has acquired a corollary "legal right to withdraw an equivalent amount of water from the basin." [29] Thus OCWD asserts that it has usufructuary rights arising from its replenishment activ-

ities. Defendants suggest that such rights arise only when a well is drilled, not through recharge activities.[30] Defendants are simply wrong.

OCWD's enabling Act specifically charges it with the power to "[a]ppropriate and acquire water and water rights within or outside of the district." [31] In accordance with this mandate, OCWD has acquired a usufructuary right through its replenishment activities under California law.[32] Because OCWD has a "possessory property right" that it alleges has been damaged by defendants' conduct, neither its negligence nor products liability claims are barred for lack of a cognizable interest.[33]

## 2. The Economic Loss Doctrine

■ Defendants cite a line of California cases beginning with *Seely v. White Motor Co.*[34] for the proposition that until a defec-

25. *See* Pl. Mem. at 3 ("Defendants assert that the District 'does not own any water production wells or the groundwater aquifer and, accordingly, cannot claim that there have been detections of MTBE, TBA or any other petroleum substances in any of its property.' The District, however, has both statutory and usufructuary interests in the groundwater aquifer ....") (citation omitted).

26. *Id.* at 5.

27. *Fullerton*, 90 Cal.App.3d at 598, 153 Cal. Rptr. 518.

28. 12 Witkin's Summary of California Law, ch. 17 § 958 (10th ed.2005) (citing California Water Code § 1005.1).

29. Pl. Mem. at 5. *See also* Pl. 56.1 at 3 ("[T]he District has the right to appropriate groundwater within the District's boundaries to the extent that it has supplemented the aquifer through its recharge activities.").

30. *See* 8/22/06 Transcript of Oral Argument ("Tr.") at 101–102 ("You can obtain a usufructuary property interest in that groundwater, but in order to do so, you must divert it and put it to some beneficial use. And in

non-lawyer terms, that is drilled wells ... they have never drilled a well, they [have] never diverted the groundwaters of the state to a beneficial use, [they have] no property interest.") (John Lyons, counsel for defendant Conoco Phillips Co.).

31. OCWD Act, California Water Code § 40–2(6)(d).

32. The decision in *New Mexico v. General Elec. Co.*, 335 F.Supp.2d 1185 (D.N.M.2004), is instructive. There, the court rejected the State's argument that it had a usufructuary interest in groundwater sufficient to show injury to property, because the State had not followed the regulatory procedures necessary to obtain a right of appropriation under New Mexico law. *See id.* at 1240. By contrast, the OCWD Act expressly gives OCWD these rights of appropriation. *See* OCWD Act, California Water Code § 40–2(6)(d).

33. *Fullerton*, 90 Cal.App.3d at 598, 153 Cal. Rptr. 518.

34. 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965).

tive product physically damages a plaintiff's property, any losses are merely economic and are not recoverable through negligence or products liability claims.[35] Defendants urge this Court to dismiss these claims because all of OCWD's damages are economic, and therefore "even if proven, would not constitute 'property damage' or present physical injury." [36]

■ Defendants correctly state the economic loss doctrine: In the *absence of physical injury to property*, a plaintiff's economic losses cannot support a claim for negligence or products liability. However, where the defective product causes physical damage to property courts have also allowed recovery for economic loss.[37]

Here, OCWD has alleged present, physical MTBE contamination of the groundwater, in which it asserts a possessory right. To the extent that such contamination is actually present in the groundwater and has caused OCWD to expend resources in testing and remediating groundwater, or otherwise injured OCWD, such claims are not barred as mere economic loss.

**35.** *See, e.g., Aas v. Superior Court*, 24 Cal.4th 627, 101 Cal.Rptr.2d 718, 12 P.3d 1125 (2000); *San Francisco Unified School Dist. v. W.R. Grace & Co.*, 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305 (Cal.Ct.App.1995).

**36.** Def. Mem. at 9.

**37.** *See, e.g., Transwestern Pipeline Co. v. Monsanto Co.*, 46 Cal.App.4th 502, 53 Cal.Rptr.2d 887 (Cal.Ct.App.1996) (remediation costs associated with removing contamination from plaintiff's pipelines recoverable); *San Francisco Unified School Dist.*, 37 Cal.App.4th at 1327 n. 5, 44 Cal.Rptr.2d 305 (noting that loss of profits are not recoverable where there is no physical injury); *Selma*, 221 Cal.App.3d 1601, 271 Cal.Rptr. 596 (allowing recovery for remediation costs when plaintiff showed injury to groundwater).

**38.** Def. Mem. at 13.

## B. Trespass

■ Defendants next argue that OCWD's claims for trespass must fail because it has no "possessory interest in real property" with which the alleged MTBE contamination has interfered.[38] However, usufructuary interests are possessory property rights and the interference with those rights may give rise to liability for trespass. Groundwater contamination can constitute a trespass, where there is a "physical invasion" that results in the "presence of contamination on [the] property." [39] Although OCWD's "possessory interest" in the groundwater is not the equivalent of owning land, its property right has nevertheless suffered an invasion from the alleged MTBE contamination. As noted earlier, the OCWD Act gives OCWD the authority to acquire usufructuary rights, and it has done so through its recharge activities.[40] As a result, OCWD has stated a valid claim for trespass.

## C. Public Nuisance

This Court has previously held that OCWD is statutorily authorized to pursue a claim of public nuisance.[41] Defendants

**39.** *In re Burbank Envtl. Litig.*, 42 F.Supp.2d 976, 984 (C.D.Cal.1998).

**40.** *See supra* notes 27–32 and accompanying text. The decision in *New Mexico v. General Electric* is again instructive. Although the court held that the State could not bring a claim for trespass in the absence of "property within the State's *exclusive possession*," it noted that the result would have been different if the State claimed "injury to the State's possessory interest as a water rights holder." *New Mexico*, 335 F.Supp.2d at 1232, 1234. Because the State had not established its usufructuary rights, the court held that it had no claim for trespass. By contrast, OCWD has alleged a "possessory interest as a water rights holder." *Id.* at 1234.

**41.** *See In re MTBE Prods. Liab. Litig.*, 2005 WL 1500893 (S.D.N.Y. June 24, 2005). Plaintiff suggests that this Court's prior decision

now argue that California law generally prohibits nuisance claims against a manufacturer or distributor of an allegedly defective product, as such claims properly sound in products liability rather than nuisance.[42] Further, in public nuisance suits, where a plaintiff seeks to recover damages rather than simply abatement of the nuisance, it must show that it has suffered an injury distinct from that suffered by the general public.

### 1. Creating or Assisting in the Nuisance

 While it is true that "the law of nuisance is not intended to serve as a surrogate for ordinary products liability," California courts have allowed nuisance claims to proceed where the manufacturer's or distributor's actions have "created or assisted in the creation of the nuisance."[43] Such actions, however, must amount to more than simply the manufacture or distribution of the defective product—rather, a defendant must take other "affirmative acts" that contribute "directly" to the nuisance.[44] Importantly, a failure to warn regarding the dangers of a product, without more "activity directly connected" to the creation of the nuisance, is an insufficient basis for nuisance liability.[45] But where a defendant engages in

---

settles the matter. *See* Pl. Mem. at 13 n. 10 ("[The opinion] clearly stated that OCWD is entitled to pursue a public nuisance cause of action anytime there is 'interference with water ... pollution[,] [diminution,] or contamination of the water supply.' ") (quoting *In re MTBE Prods. Liab. Litig.*, 2005 WL 1500893, at *18). Although that decision held that the scope of OCWD's statutory authority is broad enough to include actions for abatement of a public nuisance generally, there was no discussion of whether a nuisance action could be brought against manufacturers or distributors of a defective product. *See In re MTBE Prods. Liab. Litig.*, 2005 WL 1500893, at *5 ("Thus, the question [here] is whether OCWD's enabling statute confers authority on plaintiff to sue for the abatement of contaminated groundwater.").

42. *See* Def. Mem. at 11 ("California law does not permit nuisance claims to be brought against the manufacturers and suppliers of allegedly defective products."). *See also City of San Diego v. United States Gypsum Co.*, 30 Cal.App.4th 575, 584, 35 Cal.Rptr.2d 876 (Cal.Ct.App.1994) (rejecting argument that "manufacturer of an allegedly defective product can be held liable in nuisance ... because the stream of commerce can carry pollutants every bit as effectively as a stream of water") (quotation marks removed). Defendants further suggest that claims for nuisance and products liability cannot be maintained in the same action. *See* Def. Mem. at 11 ("California law recognizes a distinction between nuisance and products liability and the elements required for each."). In this regard, OCWD correctly argues that "this in no way implies that the two causes cannot be prosecuted in the same action." Pl. Mem. at 13. *See also County of Santa Clara, et al. v. Atlantic Richfield Co.*, 137 Cal.App.4th 292, 308, 40 Cal. Rptr.3d 313 (Cal. Ct.App. June 21, 2006) ("The mere fact that plaintiffs alleged both a public nuisance cause of action and products liability cause of action is of no moment."). Nevertheless, whether a claim for nuisance may be maintained together with one for products liability is a different question than whether the nuisance claim may be brought in the first instance.

43. *City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal.App.4th 28, 38–39, 13 Cal.Rptr.3d 865 (Cal.Ct.App.2004). In *Modesto*, the court held that defendants who simply manufactured or distributed a chemical cleaning solvent, which had been discharged by various dry cleaners into the city's sewer system, could not be held liable for nuisance. However, defendants who had installed systems that resulted in improper discharge of contaminated wastewater, or instructed the dry cleaners to do so, could be found liable. *See id.* at 41–42, 13 Cal.Rptr.3d 865.

44. *Id.* at 41–42, 13 Cal.Rptr.3d 865.

45. *Id.* at 42, 13 Cal.Rptr.3d 865 ("In our view, such behavior is analogous to the manufacture, distribution, and supplying of [a defective product] ... it does not fall within the

more substantial conduct contributing to the nuisance, liability may well be appropriate.[46]

The question here is whether the evidence presented at this stage shows that "defendants assisted in the creation of a nuisance, or only that they produced or supplied the defective products."[47] Defendants contend that there is no evidence that they assisted in the creation of the nuisance because they took no "affirmative steps" which contributed to the nuisance nor "specifically instructed" improper use.[48]

OCWD argues that defendants did more than merely manufacture or distribute gasoline containing MTBE without warning of the danger posed. OCWD contends that defendants "represented, asserted, claimed and warranted" that gasoline containing MTBE "could be used in the same manner as gasoline [without MTBE]" and that it "did not require any different or special handling instructions."[49] Further,

OCWD states that defendants "marketed and promoted MTBE knowing that underground storage tanks . . . could not safely contain MTBE."[50] At the same time, according to OCWD, defendants knew that such claims were false and that MTBE posed "unique dangers" to groundwater.[51]

These allegations are remarkably similar to those in *Santa Clara,* and a key sentence from that decision bears repeating: "[L]iability is premised on defendants' promotion of lead paint for interior use with knowledge of the hazard that such use would create."[52] If the allegations made by OCWD are true, such allegations would be sufficient to sustain a nuisance claim against the defendants.[53]

But neither side offers sufficient evidence to support their competing arguments regarding summary judgment. Defendants concede that California law permits nuisance claims against manufacturers of defective products in some circumstances, but do no more than assert

context of nuisance, but is better analyzed through the law of negligence or products liability, which have well developed precedents to determine liability for failure to warn.").

**46.** In *County of Santa Clara* the court distinguished a passive failure to warn from the more active conduct necessary to sustain a nuisance action:

> Liability [for nuisance] is not based merely on production of a product or failure to warn. Instead, liability is premised on defendants' *promotion of lead paint for interior use* with knowledge of the hazard that such use would create. This conduct is distinct from and far more egregious than simply producing a defective product or failing to warn of a defective product; indeed, it is quite similar to instructing the purchaser to use the product in a hazardous manner. . . .

*Santa Clara,* 137 Cal.App.4th at 309, 40 Cal. Rptr.3d 313.

**47.** *Modesto,* 119 Cal.App.4th at 40, 13 Cal. Rptr.3d 865.

**48.** *See* Def. Mem. at 13 (quoting *Modesto,* 119 Cal.App.4th at 42, 13 Cal.Rptr.3d 865).

**49.** Pl. Mem. at 16 (citing Compl. ¶ 68).

**50.** *Id.* (citing Compl. ¶ 61).

**51.** *Id.* (citing Compl. ¶¶ 48, 50, 56, 61).

**52.** *Santa Clara,* 137 Cal.App.4th at 309, 40 Cal.Rptr.3d 313.

**53.** As OCWD notes, this Court has previously ruled that a nuisance claim may be maintained against the manufacturer or distributor of gasoline containing MTBE where the manufacture or distribution is coupled with other actions that "demonstrate defendants' participation and assistance in the creation of a nuisance." *In re MTBE Liab. Litig.,* 175 F.Supp.2d at 629. However, unlike the instant summary judgment motion, that decision resolved defendants' motion to dismiss and therefore mere allegations of such conduct were sufficient.

that those circumstances are absent. Likewise, the bulk of OCWD's memorandum cites to the allegations made in its Complaint rather than "specific facts showing there is a genuine issue for trial." [54] OCWD provides no support (other than its own pleadings) regarding defendants' knowledge or their alleged representations as to the safety of MTBE and instructions to downstream handlers of gasoline containing MTBE as to "how to store and dispose of the product." [55] And while OCWD does note that some defendants owned and leased stations that may have leaked gasoline in the district, it offers little or no evidence that this conduct contributed directly to the alleged nuisance in the manner that courts have found sufficient to sustain nuisance liability. [56] Because neither party has come forward with sufficient evidence for this Court to determine whether a genuine issue of material fact exists, summary judgment is not warranted at this time. Given that discovery is still ongoing, it is likely that the parties will be able to develop the record sufficiently to allow further consideration of summary judgment on this issue at the appropriate time.

### 2. Distinct Injury

[12, 13] While a nuisance action may be brought against the manufacturer of a defective product, the remedy for a public nuisance will generally be limited to abatement. Damages cannot be recovered unless a plaintiff can show it has been injured in a manner distinct from that suffered by the general public. [57]

In *Santa Clara*, for example, the plaintiffs brought two public nuisance actions: the first was brought as a representative of the people, and sought abatement; the second was brought on behalf of a class of plaintiffs whose property had been injured, and sought damages. The court allowed plaintiffs' first nuisance claim, finding that representative actions seeking abatement did not present the same concerns articulated in *Modesto* over holding manufacturers of defective products liable for damages in nuisance:

> A *representative* public nuisance cause of action seeking *abatement* of a hazard created by affirmative and knowing promotion of a product for hazardous use is *not* "essentially" a products liability action "in the guise of a nuisance action" and does not threaten to permit public nuisance to "become a monster that would devour in one gulp the entire law of tort." [58]

On the other hand, the *Santa Clara* court held that the plaintiffs could not bring damages claims *on their own behalf* under a theory of public nuisance: "Plaintiffs' [second] public nuisance cause of action is much more like a products liability cause

54. Fed.R.Civ.P. 56(e).

55. Pl. Mem. at 15.

56. *See id.* In reviewing the trial court's grant of summary judgment in favor of the defendants and remanding that decision to the trial court for further consideration, the *Modesto* court found it significant that some defendants manufactured disposal systems "designed to dispose of wastes improperly," while others "instructed users ... to dispose of wastes improperly." 119 Cal.App.4th at 43, 13 Cal.Rptr.3d 865. Here, however, it

cannot reasonably be inferred—without more—that because a defendant owned a gas station where a leak occurred, that it intended, or designed, or otherwise acted in a manner likely to promote such leaks.

57. *See* California Civ.Code § 3493. There is no such limitation for private nuisance actions. *See id.* § 3501.

58. *Santa Clara*, 137 Cal.App.4th at 309, 40 Cal.Rptr.3d 313 (quoting *San Diego*, 30 Cal. App.4th at 586–87, 35 Cal.Rptr.2d 876).

of action because, it is, at its core, an action for *damages for injuries caused to plaintiffs' property by a product*, while the core of a representative cause of action is an action for remediation of a public health hazard." [59]

As in *Santa Clara*, OCWD may seek abatement in its representative capacity. But the remaining question is whether OCWD can recover for damages on its public nuisance claim. In *New Mexico v. General Electric*, for example, the court noted that in order to recover for property damage, the State would have to show that it "suffered some discrete physical harm or pecuniary loss apart from the more generalized injury to the public's interest" resulting from the groundwater contamination. [60] The court stated that "pecuniary losses arising from existing and future response and remediation costs . . . may be recoverable as damages reflecting a 'special injury' to the State's property interests," but that because the State had not established its usufructuary interests, it was barred from recovering damages. [61]

Here, OCWD alleges that it "is specially and adversely affected by the nuisance" and that its "injury is separate and distinct from that of the public." [62] OCWD has established a valid usufructuary interest which is independent of the State or the People's general interest in groundwater. [63]

Accordingly, OCWD may seek damages on its public nuisance claim to the extent that the alleged nuisance has interfered with that right.

## D. Declaratory Relief

■■■ Finally, OCWD seeks an order declaring defendants liable for the "costs of all remedial and other actions necessary to abate or remove MTBE . . . which is contaminating and threatening OCWD's property," declaring that certain defendants' "gasoline delivery systems constitute a nuisance," and compelling defendants "to abate the public nuisance proximately caused by their conduct." [64]

■■■ Defendants argue that OCWD's claim for declaratory relief should be denied because it is duplicative of the other relief sought in this action. [65] Defendants' point is well taken. Such relief is identical to that sought under OCWD's common law claims for products liability, negligence, trespass, and nuisance. Declaratory relief is generally inappropriate where duplicative of other claims in the action as the "object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues." [66] Accordingly, defendants' mo-

---

59. *Id.* at 313. Because *Santa Clara* was decided during the briefing period on this motion, neither party discussed the impact of this decision on OCWD's request for damages.

60. *New Mexico*, 335 F.Supp.2d at 1240

61. *Id.* at 1240–41 (citing *Selma*, 221 Cal. App.3d at 1615, 271 Cal.Rptr. 596).

62. Compl. ¶¶ 96–98.

63. *See* 12 Witkin's Summary of California Law, ch. 17 § 958 (citing California Water Code § 1005.1). *See also New Mexico*, 335 F.Supp.2d at 1240.

64. Def. Mem. at 15 (citing Compl., Prayer for Relief ¶¶ 3–5).

65. *Id.* at 13–14.

66. *General of Am. Ins. Co. v. Lilly*, 258 Cal. App.2d 465, 470, 65 Cal.Rptr. 750 (Cal.Ct. App.1968). OCWD suggests that its request for relief is not duplicative because it also seeks determination as to future rights, including "damages and expenses the District will incur in the future" arising from "threatened" contamination of groundwater. Pl. Mem. at 17. However, a determination of future rights is not *necessary* to the present action. *See Parsons v. Tickner*, 31 Cal.App.4th

tion to dismiss plaintiff's claims for declaratory relief is granted.

## IV. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgement is denied in part, and granted in part. The Clerk of the Court is directed to close this motion (docket # 1015).

SO ORDERED.

1513, 1533, 37 Cal.Rptr.2d 810 (Cal.Ct.App. 1995) ("Future rights may be determined *when a declaration of the present and actual controversy is dependent* on adjudication of such future rights.") (emphasis added).